IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| MELISSA SUE TRIGG, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Civil No. 07-06074-CV-W-NKL |
| v. | ) | Crim. No. 05-06022-01-W-NKL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Pending before the Court is Melissa Sue Trigg's ("Trigg") Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255 [Doc. # 1]. For the reasons set forth below, the Court

denies Trigg's motion.

**I.      Factual Background**

On March 16, 2006, pursuant to a plea agreement, Trigg pled guilty to conspiracy to

distribute 500 grams or more of methamphetamine (Count I) and possession of a firearm in relation

to a drug trafficking crime (Count IV). The Court explained that Count I carried a minimum 10-year

sentence with a maximum of life in prison, and Count IV carried a minimum five-year sentence.

Asked if she understood the statutory range of punishment, Trigg answered, "Yes, ma'am." The

Court then explained the rights Trigg would be giving up if she pled guilty, including her rights to

trial, to a jury, to a presumption of innocence, to call witnesses, and to appeal. Trigg stated to the

Court that she understood she had those rights if she chose to go to trail. Trigg also told the Court

she had an opportunity to read the plea agreement in its entirety, that she "fully" understood it, and

that she signed the agreement voluntarily. The agreement contained, among other things, the factual

1

basis that the government believed would be sufficient to find her guilty of Counts I and IV, as well as the agreed base offense level of 31 (including a three-level reduction for acceptance of responsibility). The Court told Trigg that the agreement was not binding on the Court, which Trigg said she understood. She also told the Court that no promises had been made to her about what the Court would or would not do at the time of sentencing. Trigg stated she understood that once she pled guilty she would not have a right to withdraw that plea.

At that point, the government summarized the plea agreement. When asked if the government's summary accorded with her understanding of the plea agreement, Trigg answered, "Yes, ma'am." Trigg also stated she had not been coerced by anyone into changing her plea from not guilty to guilty, that she had sufficient time to consult with her attorney and that she was satisfied with the representation that had been provided to her. Trigg then pled guilty. In summarizing the evidence that would have been presented at trial, the government noted, "There would be possibly witnesses who are not indicted in this case and possibly witnesses who would also testify that Ms. Trigg was selling large quantities of methamphetamine during the time period of December 1, 2001, through and including May 20th of 2005." In addition, the government stated the evidence would show that when she was arrested in May of 2005, "she had some methamphetamine on her person and a fully loaded Glock Model 23 .40 caliber semiautomatic pistol in her purse," which she admitted to owning. The government explained it had witnesses that would testify they knew Trigg "had that pistol with her during some of her drug trafficking crimes." The Court then asked Trigg if she agreed that the evidence would be presented by the government, and if she agreed that she committed the acts the government outlined. Trigg answered "Yes ma'am" to both questions.

At this point, Trigg's attorney clarified that "Ms. Trigg's historical involvement in the conspiracy was not as lengthy as December of 2001; however, she was squarely involved in the conspiracy . . . ." Her attorney also explained that the search warrant was conducted at the home of a codefendant, not Trigg's residence. The Court, having found Trigg understood the charges and penalties, and that she had voluntarily waived her constitutional rights, accepted her guilty plea.

The sentencing hearing was held on June 15, 2006. The government agreed the 10-year mandatory minimum on Count I and the five-year mandatory minimum on Count IV were appropriate. The Court clarified that the sentences were consecutive, not concurrent, which Trigg's attorney agreed was the case. The Court then gave Trigg the opportunity to speak, and she apologized for her conduct and thanked everyone for helping her. The Court then sentenced Trigg to the statutory minimum. The Court granted her attorney's requests to waive the fine and to recommend her to the drug-treatment program.

## II. Evidentiary Hearing

On a motion to vacate, a movant is entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *See Payne v. United States*, 78 F.3d 343 (8th Cir. 1996). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id*. Moreover, a district court need not hold an evidentiary hearing in a section 2255 case when the files and records conclusively show that the movant is not entitled to relief. *See Bradshaw v. United States*, 153 F.3d 704 (8th Cir. 1998). After reviewing the records and files, the Court concludes that all of Trigg's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is necessary.

Trigg's section 2255 motion is based on ineffective assistance of counsel, raising four

Case 5:05-cr-06022-NKL   Document 329   Filed 01/03/08   Page 3 of 12

grounds for relief: (1) that her attorneys failed to properly investigate the facts relating to Count I; (2) that her attorneys improperly advised her to plead guilty to Count IV, even though she insisted that the firearm was not carried in relation to a drug trafficking crime; (3) that her attorneys failed to advise her that Counts I and IV would run consecutively; and (4) that her attorneys erroneously advised her that she would qualify for a safety-valve reduction.

## III. Discussion

To establish ineffective assistance of counsel, a movant must satisfy a two-part test. First, the movant must prove that his counsel's representation was deficient, and second, that the deficient performance prejudiced his case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if he or she "failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (internal quotation omitted).

The prejudice component "focuses on the question [of] whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Further, "[w]hen considering whether the defense suffered prejudice, [the] court must determine whether there is a reasonable probability (sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) (internal quotation omitted). This two-part test also applies where a defendant challenges a guilty plea based on the counsel's purported ineffective assistance. *See Hill v. Lockhart*, 474 U.S.

4

52, 58 (1985); *see also Iron Wing v. United States*, 34 F.3d 662, 664-65 (8th Cir. 1994) (holding there must be reasonable probability that, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial). Counsel are presumed competent and the movant bears a heavy burden in overcoming this presumption; "conclusory allegations are insufficient to rebut this presumption of competency." *Carpenter v. United States*, 720 F.2d 546, 547-48 (8th Cir. 1983).

### A. Failure to Investigate Facts Related to Count I

Trigg maintains that she told her attorneys that she did not join the conspiracy until February or March of 2004. She also asserts that she did not admit to law enforcement agents or to any other person that she was responsible for the quantity of drugs attributed to her in the plea agreement. Additionally, she claims she told her attorneys that the statements of the government witnesses were false, but her attorneys did not do any further investigation. Trigg contends she was never provided with a copy of the discovery or an opportunity to review the discovery by her attorneys, despite her requests. As a result, Trigg states she felt she had no choice but to accept the plea agreement.

First, the record reflects that her attorneys informed the Court that Trigg's involvement did not go back all the way to December 2001. More importantly, however, she cannot show prejudice because under 21 U.S.C. § 841(b)(1)(A)(viii), the 10-year mandatory minimum only requires a total drug quantity of 500 grams of methamphetamine. Even assuming she joined the conspiracy in March 2004 and participated in it until May 2005, if her plea agreement is valid, then her admission in the plea agreement that she sold one ounce of meth a week more than meets the minimum drug quantity under § 841(b)(1)(A)(viii).

In her section 2255 motion, Trigg essentially alleges ineffective assistance of counsel in persuading her to enter into the plea agreement. But Trigg testified under oath to the contrary at the

5

change of plea hearing. "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). "Thus, a petition which consists only of 'conclusory allegations unsupported by specifics [or] * * * allegations that, in the face of the record, are wholly incredible," is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion." *Id.* (citations omitted). In this case, Trigg stated during her change-of-plea hearing that she was satisfied with her lawyers, that no threats or promises had been made to induce her to plead guilty, that she had read and understood the plea agreement, that she agreed that the government would present the stated evidence, that she voluntarily signed the agreement, and that she admitted her guilt to the acts outlined by the government. *See Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). She also stated she understood that she was being charged with conspiring to distribute methamphetamine in the amount of 500 grams or more, and that the penalty for Count I was not less than 10 years in prison, not more than life in prison, not more than a $4 million fine, and not less than five years' supervised release. As a result, Trigg has a heavy burden to overcome these admissions and show that her plea was involuntary. *Id.*

In order to prove the prejudice prong of the *Strickland* test, Trigg must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Trigg asserts that her trial counsel failed to follow-up and refused to investigate the evidence or facts of the case; they also failed to interview any witnesses or to challenge statements of informants and codefendants. She

claims that had they properly investigated and advised her not to accept the plea agreement, she would not have done so, and, thus, there is a reasonable probability that she was given a longer sentence than required by the evidence. Finally, Trigg argues that "following proper investigation and correct advice" there is a reasonable probability she would not have pled guilty and would have insisted upon her case proceeding to trial. However, even aside from the fact that Trigg admitted at the change-of-plea hearing that she gave up her confrontation rights, these are nothing but unsubstantiated conclusory allegations that are, in the face of the record, wholly incredible. *See Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986) ("Hollis' vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255."); *Voytik*, 778 F.2d at 1308; *see also Galvan v. United States*, 138 Fed. App'x 890, 891 (8th Cir. 2005) (holding where movant makes conclusory allegations, district court does not err in denying claim without evidentiary hearing).

Trigg has a high school education and completed over a year of college. She was not under the influence of drugs or alcohol at the time of her change of plea hearing. She read the plea agreement and stated under oath that she understood it before voluntarily signing it. The Court and the government went over the terms in open court again, and summarized the evidence against her, after which Trigg still admitted her guilt to the Court. At the sentencing hearing, when addressing the Court, Trigg did not contest the presentence report or the plea agreement, but only said she was "sorry." As a result, there is no reason to think Trigg did not fully understand the plea agreement and its consequences. But despite all this, Trigg asks the Court to accept her present, unsworn

Case 5:05-cr-06022-NKL   Document 329   Filed 01/03/08   Page 7 of 12

statements over her previous sworn testimony, at best presenting herself as a perjurer at the plea hearing. However, her claims are clearly contradicted by her contemporaneous statements at the plea hearing, specifically where she stated she was satisfied with her attorneys and no promises had been made to her. She also makes the unsubstantiated logical leap that if her attorneys had properly investigated, it would have changed their advice. Aside from her conclusory allegations and bare assertions, Trigg has not shown she did not voluntarily and willingly enter into the plea agreement or that the outcome of the proceeding would have been any different. Thus, Trigg cannot show there is a reasonable probability she would have pleaded guilty and would have insisted on going to trial. Her first claim is denied.

### B.    Failure to Investigate Gun Charge

Next, Trigg claims her attorneys failed to investigate her claim that she did not possess a Glock, .40 caliber semi-automatic handgun in relation to any drug trafficking crime, but that it was purely coincidental. On May 2, 2005, law enforcement officers executed a search warrant at the residence of a coconspirator. During the course of that search, Trigg arrived at the residence where she was confronted by officers. She told police she had a gun in her purse; the officer's search of the purse revealed the Glock, $40,000 in cash, 35 grams of meth packaged in 10 individual bags, a digital scale and ammunition. Trigg maintains that she told her attorneys she did not own the gun, had only been carrying it for a short time, and was only transporting it to another location at the request of the gun's true owner.

The Eighth Circuit has repeatedly held that a firearm's close proximity to drugs provides sufficient evidence to support a conviction of use of a firearm in drug trafficking. *See United States v. Hilliard*, 490 F.3d 635, 641 (8th Cir. 2007) (citing *United States v. Sanchez-Garcia*, 461 F.3d 939,

8

946-47 (8th Cir. 2006)); *United States v. Cave*, 293 F.3d 1077, 1079 (8th Cir. 2002) ("[E]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices."); *see also United States v. Macklin*, 104 F.3d 1046, 1048 (8th Cir. 1997) ("Given the proximity of the firearms to the drugs in this case, the case with which the defendants could access the firearms, the ongoing drug trafficking occurring out of the residence at 5243 Cates, and the likely need for the defendants to protect both the drugs and the cash found in the residence, we hold that the district court did not clearly err in finding it was not clearly improbable that the firearms were connected with the offense of drug trafficking."). Trigg insists her attorneys were ineffective when they told her that "it didn't matter" whether she admitted to owning the gun because it was "irrelevant." However, her attorneys were correct: Possession is all that is required, not ownership, and the evidence clearly shows she was in possession of the gun. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Jenkins*, 505 F.3d 812, 817 (8th Cir. 2007) (stating conviction under § 924(c) requires "evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of furthering, advancing or helping forward the drug crime"). Given the circumstances of the search and the contents of her purse, as well as Eighth Circuit precedent, Trigg suffered no prejudice relating to the gun charge.[1]

### C. Failure to Inform Sentence Would Run Consecutively and Safety-Valve Reduction

Third, Trigg argues that she was denied effective assistance of counsel because her attorneys

---

[1]Trigg also claims that the government misled the Court by stating the warrant was executed at her residence instead of a coconspirator's. Setting aside the fact that the gun and drugs were found in her purse, which she was carrying at the time, the change-of-plea hearing transcript reveals her attorneys alerted the Court to this misstatement and the government corrected itself.

did not advise her that the gun charge (Count IV) would run consecutive to the conspiracy charge (Count I). Trigg makes only conclusory allegations without any support, and her claim is without merit. The record reflects that at the change-of-plea hearing the Court informed Trigg of the statutory minimum and maximum sentences for both Count I and Count IV, which is all she is entitled to. The Eighth Circuit has held "that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences." *See United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999) (citing *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994)) (ineffective assistance of counsel case where defendant claimed he would not have pled guilty if attorney had informed him of sentence he would receive under Guidelines). The record reflects that the Court informed Trigg of the minimum and maximum sentences. In addition, at the change-of-plea hearing the Court informed Trigg that she faced up to life in prison for the conspiracy count; therefore, she was not prejudiced because her total sentence of 15 years is no more than the maximum sentence she could have received for Count I. *See Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir. 1990) ("His total sentence, fifteen years in prison and eight years supervised release, was no more than the maximum sentence the court told him he faced on the one distribution count. Thus, he is not entitled to withdraw his guilty plea because the court failed to inform him that the sentences could run consecutively."). Also, even assuming her attorneys did not inform her the sentences would run consecutively, "a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." *See Granados*, 168 F.3d at 345. Moreover, at the sentencing hearing the Court explained that the sentences would run consecutively and gave Trigg an opportunity to address the Court; however,

Case 5:05-cr-06022-NKL   Document 329   Filed 01/03/08   Page 10 of 12

Trigg never questioned her sentence.  Finally, Trigg cannot show there is a reasonable probability she would have gone to trial because in exchange for the guilty plea, the government agreed to dismiss two counts.  *See Roberson*, 901 F.2d at 1479.

For the same reasons she cannot claim ineffective assistance regarding her consecutive sentences, Trigg cannot claim she was denied effective assistance of counsel when they told her she would qualify for the § 5C1.2 safety-valve reduction.  Trigg admits no promises were made to her, and that her attorneys explained the sentence "all depended" upon the presentence report.  Trigg also admits that her pre-trial officer told her that she would not qualify for the safety valve and that she would receive, at a minimum, 15 years because the charges would run consecutively.  Despite having this information, Trigg claims she decided to rely only on her attorneys' advice.  Trigg provides no support, however, for the conclusory allegation that she has a right to rely solely on the advice of her attorneys.  *See Granados*, 168 F.3d at 345; *see also Rios v. United States*, 228 Fed. App'x 629, 632 (8th Cir. 2007) ("In an attempt to satisfy the first prong of *Strickland*, Rios maintains his counsel never informed him of his eligibility for 'safety valve' reduction.  Rios presented no affidavit to support his assertion.").  "A defendant's misapprehension of the application of the Guidelines to his sentencing does not constitute a fair and just reason for withdrawing a plea so long as the defendant was told the range of potential punishment and that the Guidelines would be applied to determine his sentence.  This remains true even where such a misunderstanding is based on an erroneous estimation by defense counsel."  *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996) (citations omitted).  As a result, Trigg was not prejudiced.

###    D.    Trigg's Testimony at Plea Hearing

Finally, the Court addresses separately Trigg's allegation—made under her second claim for

Case 5:05-cr-06022-NKL   Document 329   Filed 01/03/08   Page 11 of 12

relief (gun charge)—that she was told by her attorneys to just say "Yes, ma'am" to everything, including in response to questions from the Court concerning her satisfaction with counsel. Trigg makes this claim in only one sentence, without any support to the record or to affidavits. It is completely contrary to her own testimony, made under oath, which carries a "strong presumption of verity." *Nguyen*, 114 F.3d at 704. Not only did she testify that she understood the agreement and that no promises had been made to her, Trigg admitted at the change-of-plea hearing that she had not been coerced by anyone to change her plea to guilty. This claim, like all of her allegations, is simply conclusory and contradicted by the record. As discussed above, she has shown no prejudice under any of her claims. Consequently, Trigg has not met her heavy burden of overcoming the admissions she made in open court.

IV.    **Conclusion**

Accordingly, it is hereby

ORDERED that Trigg's Motion to Vacate, Set Aside, or Correct Sentence [Doc. # 1] under 28 U.S.C. § 2255 is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 3, 2008
Jefferson City, Missouri

12